## John W. Carver, Adm'r, v. Chicago, Peoria & St. Louis Ry. Co.

1. EVIDENCE—*Whether There Were Means Other than Those Used to Stop a Train.*—It is proper for the jury to be informed whether there were means at hand other than those resorted to by the engineer, which could have been used in order to expedite the stopping of the engine.

2. SAME—*As to Distance in Which an Engine of a Different Type Could Be Stopped.*—Evidence is inadmissible to show that a locomotive of a kind used forty-two years ago could be stopped in seventy-five feet when running from nine to eleven miles an hour.

Trespass on the Case, for personal injuries. Error to the Circuit Court of Menard County; the Hon. HARRY HIGBEE, Judge presiding. Heard in this court at the May term, 1902. Affirmed. Opinion filed November 1, 1902.

H. W. MASTERS & SON, attorneys for plaintiff in error.

N. W. BRANSON and CHARLES NUSBAUM, attorneys for defendant in error; BLUFORD WILSON and PHILIP BARTON WARREN, of counsel.

MR. JUSTICE BURROUGHS delivered the opinion of the court. This was an action on the case, brought in the Circuit

Court of Menard County by the plaintiff in error, John W. Carver, as the administrator of the estate of Cornelius Carver, deceased, against the defendant in error, The Chicago, Peoria & St. Louis Railway Company, of Illinois, to recover damages for the death of said deceased caused by the alleged negligence of the servants of said company.

It is charged in the declaration that on July 20, 1900, Cornelius Carver, who was then alive but is now deceased, was walking on a certain railroad bridge of the defendant in error, and was unconscious that one of its engines was approaching the bridge until it was so near to him that he was unable to get off the bridge or out of the way of the engine; that the servants of the defendant in charge of the engine knew the deceased was on the bridge and of his perilous position in apt and ample time to have stopped it before it overtook him; but nevertheless such servants wantonly, recklessly and willfully propelled and drove the engine toward the deceased, who, as soon as he became aware of its approach, endeavored to get out of its way, and off the bridge, but in doing so he slipped, fell, and became fastened in the cross-ties or timbers of the bridge between the rails, and while he was so fastened the engine was wantonly, willfully and recklessly propelled by said servants upon and over him, and he was so injured thereby that he died in a short time thereafter from the effects thereof; and that the deceased left certain persons as his next of kin who had a pecuniary interest in his life and were damaged by his death.

And it also charged that the servants of the defendant in error who were in charge of the engine, knew of the perilous position of the deceased while on the bridge in apt and ample time to have stopped the engine before it struck him, but said servants nevertheless did not exercise ordinary care to so stop it, but on the contrary, willfully, recklessly and wantonly drove it upon and over the deceased and killed him.

The defendant in error pleaded not guilty, and a trial was had by jury, who returned a verdict in favor of the

railway company, upon which the court entered judgment after having overruled a motion of the administrator for a new trial.

The administrator prosecutes this writ of error to effect a reversal of the judgment, and insists that the Circuit Court erred in ruling upon the evidence, instructions and motion for a new trial, and that the trial judge made improper statements to the jury during the trial.

The evidence shows that from the city of Petersburg in Menard county, Illinois, to Tice Station, which is about four miles southeastwardly from Petersburg, there is considerable grade on the railroad in question, and in order to assist heavy trains up this grade, the railway company keeps a switch engine and crew at Petersburg. On July 20, 1900, this switch engine had helped a freight train from Petersburgh to Tice Station, and was returning to Petersburg in the afternoon, with the pilot in front, and while approaching the eighty feet long railroad bridge spanning a branch of the Sangamon river, at the rate of from nine to eleven miles an hour, the engineer, who was at his proper place on the right-hand side of the cab, discovered the deceased, who was then about thirty feet from the end of the bridge nearest the engine, and walking between the tracks toward the farther end of the bridge. At the time the engineer discovered the deceased, the engine was from 200 to 300 feet from him, and from where the deceased was on the bridge, it was about seven feet to the ground.

The railroad tracks as they approached the bridge from the direction in which the engine was coming, ran from the south toward the north, with considerable of a curve toward the east; and by reason of the curve, the engineer, from his side of the cab, could not see the deceased on the bridge until the engine was within 300 feet of him.

The fireman was fixing the door to the fire-box of the engine, and the conductor was on the pilot looking toward the east, when the engineer discovered the deceased on the bridge. Immediately upon making such discovery, the engineer whistled the danger signal, which caused the fire-

man to take his place at once on the left side of the cab
and begin ringing the bell, and the conductor to look ahead.
All three of them saw the deceased (who had also heard
the signal), start to go from between the rails toward the
right, as if he were going to jump off the bridge; but instead
of doing so, he suddenly turned and ran between the rails
toward the end of the bridge farthest from the engine,
and when within about eight to twelve feet thereof, he
slipped, was caught in the timbers of the bridge and fell
between the tracks.    Upon discovering that the deceased
had heard the whistle but did not get off the bridge, the
engineer applied the emergency brake, reversed the engine,
in order to stop it as soon as possible, using all the means
at his command.    When the engine stopped, it had struck,
run over and severely injured the deceased, and had passed
beyond the bridge about four feet.

Cornelius Carver died in a short time after receiving the
injury.    He was at the time twenty-one years old, in full
possession of all his faculties, a very bright and industrious
young man, and left persons as next of kin who were
pecuniarily damaged by his death.

The deceased was attempting to cross the bridge without
any authority from the railroad company.

When the engineer was being examined as a witness for
the railway company, the record shows that its counsel
asked him :

" What more could you have done to stop the engine ? "
Objection by plaintiff.

Q.    " If there is any other way, or other thing that you
could make use of to stop the train, what was it ? "   A.
" None at all.    I "—

Motion by defendant to strike out the part of the
answer beginning, " I did," etc.    Sustained by the court.

Q.    " What more could you have done, if anything, to
stop the train ? "   A.    " I could not have done anything
more at all."

Objection by plaintiff; overruled by the court.

It is claimed that the rulings of the court above indi-
cated were prejudicial to the administrator.    The engineer

had testified that as soon as he discovered Carver was on the bridge he gave the danger signal, applied the emergency brake and reversed the engine, when the above questions were asked, and the objections, motion and rulings were made; and it was proper for the jury to be informed whether there were means at hand other than those resorted to by the engineer, which could have been used in order to expedite the stopping of the engine. But even if the above rulings had been erroneous, in the absence of the record showing that counsel for administrator preserved an exception thereto, he will not be heard in this court to complain of them.

The administrator showed by his witness Eastman, that he (witness) was seventy years old and had been a machinist for about sixty years. That he was a locomotive engineer from 1856 to 1860, and was familiar with locomotives as they were built at that time. They then had nothing but a hand-brake. He was then asked:

Q. "At the time that you were a locomotive engineer and running an engine as they were built in that day, can you tell us in what distance such an engine, equipped as engines were equipped in that day, with a hand-brake, and running nine miles an hour, could be stopped?"

Objection by defendant as immaterial and incompetent.

Mr. Masters (counsel for administrator): "I offer to prove by this witness that an engine such as he used at that time, when he was a professional engineer, and equipped with a hand-brake, as engines were in that day, running nine miles per hour, could stop within seventy-five feet."

Objection by defendant; sustained by the court; exception by the plaintiff.

It is insisted that the court committed prejudicial error in refusing to admit the offered testimony. But we think that the ruling of the court was manifestly proper for the reason that it would not have aided the jury in properly determining this case, to have been informed that an engine, constructed as they were forty-two years ago, with a hand-brake, could stop within seventy-five feet when running from nine to eleven miles an hour. It might have been proper for the plaintiff to have shown by a competent wit-

ness that an engine constructed and equipped like the one which injured the deceased, when running from nine to eleven miles an hour upon a track and grade similar to the one in question, by proper management could have been stopped within seventy-five feet, but such was not the testimony offered.

The record shows that just before the trial judge read to the jury the instructions given at the request of the plaintiff, he stated to them—" I will now give you the following instructions on behalf of the plaintiff," and then read them; and again, just before reading those given at the request of the defendant, he stated—" I will now give you the following instructions in behalf of the defendant," and then read them. But it does not show that the plaintiff made any objection or took any exception to either statement; nor that he urged in his motion for a new trial, that the court improperly made either of such statements; and the making of them is not assigned in this court as one of the errors. And yet, for the first time in this court, the making of such statements are argued to be such prejudicial error as ought to work a reversal of the judgment. In the absence of the record showing an objection or exception, or an error being assigned calling it in question, we are precluded from considering or determining whether the making of either of such statements by the trial judge, was or was not proper.

We have examined the eleven instructions which the court gave at the instance of the administrator, and the nine given at the instance of the railroad company, together with those that were requested to be given by the administrator but were refused, and have been unable to find that a single one of those refused, contained anything which was not fully covered by those which were given, and those which the court refused were properly refused for that reason, if for no other.

The facts in this case are practically undisputed, and under the circumstances disclosed by this record, we are satisfied that the jury were warranted in the conclusion that the young man was accidentally run over and killed by the

switch engine without legal fault on the part of the railway company or its servants.

So long as persons will continue to use the space between railway tracks at times and places where they have no right to be, some of them will be at times subjected to injuries which are grievous to be borne, but must be endured as a tribute to their folly and indiscretion; and it would be grossly unjust to recompense such, or enlarge their estate at the expense of those who, in using their private property in a lawful manner, happen to inflict such injuries without intention, or by such recklessness as manifests an improper regard for the rights of others.

Being unable to find any reversible error in this record which warrants a reversal of the judgment, it will be affirmed.